FILED

2022 Mar-22  AM 09:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **KAREN MAYWEATHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 6:20-cv-01562-AMM** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **Commissioner,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF DECISION

Plaintiff Karen Mayweather brings this action pursuant to the Social Security

Act (the "Act"), seeking review of the decision of the Commissioner of Social

Security ("Commissioner") denying her claim for a period of disability and disability

insurance benefits ("benefits") and supplemental security income. *See* 42 U.S.C. §§

405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS**

the decision of the Commissioner.

### I.    Introduction

On November 14, 2018, Ms. Mayweather protectively filed an application for

benefits under Title II of the Act, alleging disability as of September 1, 2018. R. 20,

51, 88, 151–55. Also on November 14, 2018, Ms. Mayweather protectively filed an

application for supplemental security income under Title XVI of the Act, alleging

disability as of September 1, 2018. R. 20, 156–65. Ms. Mayweather alleges disability due to vein disorder, edema cellulitis, bacteria infection, high blood pressure, and limited standing ability. R. 52. She has fourteen years of education and has past relevant work experience as a garment sorter. R. 46, 54.

The Social Security Administration ("SSA") initially denied Ms. Mayweather's applications on January 17, 2019. R. 20, 51–71, 75, 80. On February 4, 2019, Ms. Mayweather filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 20, 92–93. That request was granted. R. 94–96. Ms. Mayweather received a video hearing before ALJ Mary E. Helmer on November 7, 2019. R. 20, 32–50. At the hearing, Ms. Mayweather amended her alleged onset date to October 8, 2018. R. 20, 36. On November 27, 2019, ALJ Helmer issued a decision, finding that Ms. Mayweather was not disabled from October 8, 2018 through the date of her decision. R. 17–28. Ms. Mayweather was forty-seven years old at the time of the ALJ decision. R. 27–28.

Ms. Mayweather appealed to the Appeals Council, which denied her request for review on August 14, 2020. R. 1–3. After the Appeals Council denied Ms. Mayweather's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On October 7, 2020, Ms. Mayweather sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. §§ 404.1520, 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional

capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c), 416.920(g)(1), 416.960(c).

The ALJ determined that Ms. Mayweather last met the insured status requirements of the Act on December 31, 2023. R. 20, 22. Next, the ALJ found that Ms. Mayweather had not engaged in substantial gainful activity since her alleged onset date. R. 22. The ALJ decided that Ms. Mayweather had the following severe impairments: obesity and cellulitis. R. 22–23. The ALJ found that Ms. Mayweather's

hypertension and gastroesophageal reflux disease were "non-severe" impairments because "the record does not show that these impairments cause more than a minimal impact on [Ms. Mayweather's] ability to function." R. 23. Additionally, the ALJ found that "[t]he treating medical records also do not show that these impairments have caused more than minimal limitation in [Ms. Mayweather's] ability to do basic work activities for any period of twelve continuous months." R. 23. Overall, the ALJ determined that Ms. Mayweather did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 23.

The ALJ found that Ms. Mayweather's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 24–25. The ALJ found that Ms. Mayweather had the "residual functional capacity to perform light work" with certain limitations. R.24. The ALJ determined that Ms. Mayweather must: have no operation of foot controls; have no more than occasional climbing of ramps and stairs; never climb ladders, ropes, and scaffolds; never kneel, crouch, or crawl, though she may frequently stoop; avoid concentrated exposure to extreme wetness; and avoid all exposure to excessive vibration, unprotected heights, and hazardous machinery. R. 24.

According to the ALJ, Ms. Mayweather was "capable of performing past relevant work as a garment sorter." R. 27. The ALJ determined that "[t]his work does not require the performance of work-related activities precluded by [Ms. Mayweather's] residual functional capacity." R. 27.

Based on these findings, the ALJ concluded that Ms. Mayweather did not have a disability as defined in the Act, from October 8, 2018 through the date of the decision, November 27, 2019. R. 27–28. Ms. Mayweather now challenges that decision.

## III. Factual Record

The relevant medical evidence in the record begins before the alleged disability onset date. However, the period relevant to the Commissioner's disability determination is October 8, 2018 through November 27, 2019.

On July 8, 2017, Ms. Mayweather presented to the After Hours Clinic in Sumiton with a complaint of right leg skin irritation and pain. R. 433. The physical exam revealed "Right lower extremity in between knee and ankle dry and flaky with several ulcerated areas and purulent drainage." R. 434. Her wound was treated and she was given medications and instruction to follow up with her primary care physician. R. 435.

On September 5, 2018, Ms. Mayweather presented to the emergency department at Walker Baptist Medical Center complaining of cellulitis and "skin

irritation and weeping from the right lower leg" for a week and a half. R. 257. Ms. Mayweather reported that this had happened twice before, and she was previously treated with topical and oral antibiotics. R. 257. Ms. Mayweather reported leg pain, fever, and nausea. R. 258. Ms. Mayweather had normal range of motion, but tenderness to her right lower leg. R. 259. She was diagnosed with "circumferential erythema and ulceration to the right lower leg," given an IV of Vancomycin, discharged with antibiotics, and advised to return in two days for a wound re-check. R. 260, 263. Ms. Mayweather did not follow up. R. 296.

On October 9, 2018, Ms. Mayweather presented to the emergency department at Walker Baptist Medical Center where she was admitted with "Cellulitis of right lower extremity." R. 293. She stated that her leg looked "mildly improved" from her September visit. R. 296. The records indicate that Ms. Mayweather had "a fairly severe large area of cellulitis involving her right calf area. Despite vigorous outpatient treatment it continued to grow worse." R. 296. Ms. Mayweather exhibited normal range of motion, but tenderness and swelling. R. 300. She was discharged on October 13, 2018, and asked to follow up with the wound care clinic at Princeton Baptist Medical Center and also with her primary care physician. R. 293, 296.

On October 24, 2018, Ms. Mayweather presented to Princeton Baptist Medical Center "with an almost circumferential wound of the right lower leg which . . . has been present for about a month." R. 362, 375. The progress notes state that

Ms. Mayweather was not currently wearing compression and "works full time at a donation center where she . . . stands on her feet all day." R. 375. Ms. Mayweather was diagnosed with "Chronic venous hypertension (idiopathic) with ulcer of right lower extremity." R. 376. Edema was present in her right leg, but not in her left leg. R. 376. Ms. Mayweather was given instructions on wound cleaning, dressings, and compression/edema control, and advised to follow up in two weeks. R. 369.

On November 7, 2018, Ms. Mayweather presented to Princeton Baptist Medical Center to follow up. R. 394. The progress notes indicate that her wound was "dramatically improved." R. 406. Edema was present in her right leg, on which she wore a compression device, but not in her left leg. R. 406. Ms. Mayweather was given instructions on wound cleaning, topical treatments, dressings, and compression/edema control, and advised to follow up in three weeks. R. 402.

On November 28, 2018, Ms. Mayweather presented to Princeton Baptist Medical Center to follow up. R. 420. The progress notes indicate her "Right venous stasis ulcerations are healed." R. 420. Edema was present in her right leg, on which she wore a compression device, but not in her left leg. R. 420. Ms. Mayweather was given instructions on wound cleaning, topical treatments, dressings, compression/edema control, and wound healing enhancement and advised to follow up as needed. R. 421.

On June 26, 2019, Ms. Mayweather presented to Whatley Health Services, Inc. for "Hypertension and right leg pain." R. 423. The visit records indicate that Ms. Mayweather's hypertension began in 2008 and was "currently stable." R. 423. The visit records indicate that Ms. Mayweather's right leg pain "occurs occasionally and is improving," is aching pain, "is aggravated by standing," and "is relieved by rest." R. 423. Additionally, Ms. Mayweather reported that "[w]earing compression hose helps[,]" and that her "leg only aches on days when she stands too long." R. 423. The visit records also state that Ms. Mayweather "formerly had a problem with lower ext. edema and develop[ed] cellulitis. But since she started wearing support stockings every day, and she is not working, the pain is less. Recently she worked at her church in the kitchen and was on her feet for about 7 hours, and the leg hurt some that day. But, it gets better when she gets off her feet." R. 423.

On September 9, 2019, Ms. Mayweather returned to Whatley Health Services, Inc. "for follow up of Hypertension." R. 428. The records indicate that her hypertension was "currently stable." R. 428. While Ms. Mayweather alleged symptoms of edema, R. 429, her physical exam revealed a normal overview of all four extremities and no edema. R. 430.

## IV.   Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence

to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th

Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V.   Discussion

Ms. Mayweather alleges that the ALJ's decision should be reversed and remanded because "the ALJ erred by not considering [Ms. Mayweather's chronic venous insufficiency] to be a severe impairment; by not articulating proper reasons for discrediting [Ms. Mayweather's] testimony of her daily pain and swelling; and by failing to include or allow [Ms. Mayweather] any time at all to elevate her legs during the workday in her hypothetical questions to the [vocational expert]." Doc. 12 at 15.

### A. The ALJ's Determination of Severe Impairments

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual claiming benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The burden is on the claimant to introduce evidence in support of her application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The governing regulations establish a five-step

sequential evaluation process for determining whether an individual is disabled and thus eligible for benefits or supplemental security income. 20 C.F.R. §§ 404.1520, 416.920. The evaluator follows the steps in order. *See id.*

The second step of the sequential disability evaluation requires the ALJ to consider the combined severity of the claimant's medically determinable physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4(ii), 416.920(a)(4)(ii). If a claimant does "not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . , or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled." *Id.* "The finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two [she] is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r*, 420 F. App'x 901, 902 (11th Cir. 2011). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r*, 382 F. App'x 823, 824–25 (11th Cir. 2010) (stating "all that step two requires" is that the ALJ concluded the claimant "had a severe impairment").

Here, Ms. Mayweather argues that "it is not clear whether the ALJ considers [Ms. Mayweather's chronic venous insufficiency], which causes her occasional cellulitis, to be a severe impairment, or if it is just [Ms. Mayweather's] cellulitis

alone she finds to be severe." Doc. 12 at 13. At step two of the analysis, the ALJ identified Ms. Mayweather's obesity and cellulitis as severe impairments. R. 22. Therefore, the ALJ satisfied step two of the sequential disability analysis. Additionally, at steps three and four of the analysis, the ALJ specifically discussed chronic venous insufficiency. R. 23 ("The severity of [Ms. Mayweather's] impairment, cellulitis, does not meet the criteria of section 4.11 of Appendix 1, dealing with chronic venous insufficiency."); R. 24 (stating that Ms. Mayweather "alleges her vein disorder . . . limit[s] her ability to perform work activity"). Ms. Mayweather's argument that the ALJ erred by not including her chronic venous insufficiency as a severe impairment fails.

## B. The ALJ's Evaluation Under the Pain Standard

Ms. Mayweather next argues that the ALJ failed to properly consider her subjective testimony about her "daily pain and swelling." Doc. 12 at 15; *see also id.* at 13–14.

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other

subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p at *4, *7–*8. To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

After explaining the pain standard, the ALJ considered Ms. Mayweather's

testimony about her symptoms to make her credibility determination. R. 24–26. The

ALJ described Ms. Mayweather's testimony as follows:

> The claimant alleges her vein disorder, edema cellulitis, bacteria infection, and high blood pressure limit her ability to perform work activity. Additionally, the claimant alleges her impairments affect her ability to lift, squat, bend, stand, walk, climb stairs, and complete tasks.
>
> . . .
>
> At the hearing, the claimant testified that she was unable to walk long distance, and she further testified that she has difficulty with standing and sitting for long periods of time. The claimant further alleges limitations and symptoms related to her cellulitis . . . .

R. 24–25 (citations omitted). After "careful consideration" of the evidence, the ALJ

found "that the claimant's medically determinable impairments could reasonably be

expected to cause some of the alleged symptoms." R. 24. The ALJ then found that

Ms. Mayweather's "statements concerning the intensity, persistence[,] and limiting

effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record." R. 24–25.

In making this finding, the ALJ cited this specific evidence: "medical

evidence has shown [Ms. Mayweather] being diagnosed as having cellulitis in her

right lower extremity and chronic venous hypertension with ulcer of the lower right

extremity"; "medical evidence has shown [Ms. Mayweather] reporting complaints

16

such as leg pain, leg swelling, and tenderness at times"; Princeton Baptist Medical

Center records noting Ms. Mayweather as having "some edema in her right leg and

no edema in the left leg"; Ms. Mayweather being "provided with compression knee

high stockings for edema control"; medical records show that Ms. Mayweather had

a "circumferential wound of the right lower leg" and was "hospitalized for

cellulitis." R. 25.

Regarding Ms. Mayweather's cellulitis, the ALJ found that the "evidence does

not support [Ms. Mayweather] to be as limited as alleged by her impairment." R. 25.

In making this determination, the ALJ cited: musculoskeletal examinations showing

normal range of motion, as well as normal neurological and lympatics/vascular

examinations; reports of Ms. Mayweather not wearing compression and working on

her feet all day; statements that Ms. Mayweather had right leg pain "occasionally"

that was "improving"; statements that wearing compression hose "helped";

statements that Ms. Mayweather's "leg only aches on days when she stands too

long"; a report of leg pain when Ms. Mayweather worked at her church kitchen on

her feet for seven hours, but the pain "gets better when she gets off her feet"; and

treatment notes indicating "no gait disturbances, extremity weakness, or numbness

in extremities," and "no edema or pain." R. 25; *see also* R. 259–300, 362–76, 394–

406, 420–21, 423, 430. The ALJ stated that the evidence established that Ms.

Mayweather "had an episode of cellulitis from September through November 2018,"

aching of her right leg when standing too long in June 2019, and "no evidence of edema during treatment in June 2019 or September 2019." R. 25–26; *see also* R. 259–300, 362–76, 394–406, 420–21, 423, 430. The ALJ concluded that "there is no evidence that [Ms. Mayweather] has been required, for a 12 month period, to elevate her legs." R. 26.

Ms. Mayweather argues that the ALJ did not properly consider her testimony that "she cannot stand long at all," "has been in constant pain for over a year," and has had "swelling in her legs . . . every day for the last year and a half." Doc. 12 at 13–14.

Substantial evidence supports the ALJ's finding under the pain standard. The ALJ was not "clearly wrong" to discredit Ms. Mayweather's subjective complaints. *See Werner*, 421 F. App'x at 938–39. The ALJ specifically discussed Ms. Mayweather's complaints along with all of the medical evidence in the record, which the ALJ cited when she articulated explicit reasons for discounting Ms. Mayweather's testimony. *See Dyer*, 395 F.3d at 1212. And, the ALJ accounted for Ms. Mayweather's subjective complaints when she determined Ms. Mayweather was limited to light work with additional limitations. R. 26 ("Nothing in the record precludes [Ms. Mayweather] from performing work at all exertional levels. The above residual functional capacity accounts for [Ms. Mayweather's] physical impairments, and the above residual functional capacity assessment is supported by

18

the medical evidence, other evidence in the record, and [Ms. Mayweather's] testimony."). Accordingly, there is no error in the ALJ's consideration of Ms. Mayweather's subjective complaints.

### C. The ALJ's Hypothetical Questions to the Vocational Expert

Finally, Ms. Mayweather argues that the "ALJ's hypotheticals to the [Vocational Expert] simply assumed that [Ms. Mayweather] would never have to elevate her feet at all during the day." Doc. 12 at 15. This argument fails.

"In order for a Vocational Expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The hypothetical question posed by the ALJ need not include impairments that the ALJ has properly determined to be unsupported by the evidentiary record. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Because the ALJ determined that "there is no evidence that [Ms. Mayweather] has been required, for a 12 month period, to elevate her legs," the ALJ was not required to include elevation in her hypothetical question to the Vocational Expert. The ALJ included all of Ms. Mayweather's residual functional capacity's limitations in the hypothetical she posed to the Vocational Expert. Therefore, the Vocational Expert's testimony was based on a proper statement by the ALJ and constitutes substantial evidence supporting the ALJ's decision.

## VI.    Conclusion

Upon review of the administrative record, the court finds the Commissioner's

decision is supported by substantial evidence and in accord with the applicable law.

A separate order will be entered.

**DONE** and **ORDERED** this 22nd day of March, 2022.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE